UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| YAODI HU ) | |
| ) | No. 08 CV 1033 |
| Plaintiffs ) | |
| Vs. ) | Judge Ruben Castillo |
| American Bar Association  & ) | |
| Illinois Institute of Technology ) | Jury Demand |
| Chicago Kent College of Law ) | |

# Response to ABA Motion to Dismiss

## Clarification of Fact of Hu's Marriage and Child Rearing

1. Hu's first child was born on July 11, 1994.   It is Hu's wife's second pregnancy.

2. Hu entered Kent  fall 1990.  Hu finished three semesters plus another summer semester.  Hu left the law school in fall 1992.  Hu planned to resume his legal education in 1993.

3. Hu's wife arrived in U.S. from P.R. China in May 1993.   Hu married in August 1993.  Hu's marriage and children was the main reason Hu did not resume his legal education in Kent shortly after he left Kent Law School.   Hu would have resumed his legal education in fall 1993 had he not married in August 1993.    In summer and fall 1993, there was an unsuccessful pregnancy by Hu's wife which was her first pregnancy.

## Standard 304 (c) Has Disparate Impact upon Woman

4. From Hu's own experience, it is quite obvious that Standard 304 (c) has  disparate impact upon woman because woman are the one who bear the burden of pregnancy.  Woman also typically carry a heavier burden of child rearing.   Standard 304 (c)

discriminated against woman without explicitly drawing the gender line. When there is gender discrimination, the Court apply intermediate level scrutiny. See **_Craig v. Boren_**  429 U.S. 190, 197 (1976).

5. Minorities are still at the lower level of social and economic stratum, with less financial resources and consequently more likely being unable to comply with Standard 304 (c). Standard 304 (c) has disparate impact upon minorities.

6. Plaintiff Hu has third party standing to assert the legal right of others when it comes to those constitutional rights. Third party standing is well established in a long line of Supreme Court cases.  See **_Singleton v. Wulff_**  428 U.S. 106, **_Griswold v. Connecticut_**, 381 U.S. 479 (1965),  **_NAACP v. Alabama_**, 357 U.S. 449 (1958),  **_Eisenstadt v. Baird_**, 405 U.S. 438 (1972),  Barrows v. Jackson 346 U.S. 249 (1953),  **_In Planned Parenthood v. Danforth,_** 428 U.S.52 (1976), **_Pierce v. Society of Sisters_**, 268 U.S. 510 (1925**_), Craig v. Boren_**, 429 U.S. 190 (1976),  **_Carey v. Population services International,_** 431 U.S. 678 (1977).

## It is Totally Irrational to Compel One to Repeat his First Year Law School Experience

7. In the First year law school,  one studies basic contract laws, torts, legal research and writing and some other mandatory and basic class.

8. They are so basic, after studying those subject, one's knowledge naturally grows  in those fields with his or her experience.  Those basic knowledge and skill essentially stay with one forever just like one has learned some basic math or English.  It is totally irrational to compel one to start over the law school again, just because one missed the seventh years mandates from ABA.

9. Upon information and belief, ABA changed that Standard 304 many times over the years. Without discovery, we still do not know what is the legitimate purpose behind that standard, and we also do not know how ABA irrationally and capriciously changed the rules over the years.

10. Plaintiff certainly can argue that one of the purposes of the rule is to increase the revenue of those law schools, when its students are compelled to start over.

## Unpublished Opinion has No Precedential Value

11. ABA cited unpublished cases of Rohan v. American Bar Association, 1995 WL 347035 (E.D.N.Y. May 31, 1995) and Zaveletta v. American Bar Association, No. 89 326-N, (E.D.Va. May 5, 1989) supporting its conclusion that it is not state actor.

12. Unpublished decisions generally have no precedential value in this Circuit. **_U.S. v. Gajdik_** 292 F.3d. 555, 560 (7th Cir. 2002).   See also prior Circuit Rule 53 (b)(2)(iv).

13. The very reason a decision is not published is because it has no precedent value. "The panel decided not to publish its opinion. See generally 11th Cir. R. 36-2 ("An opinion shall be unpublished unless a majority of the panel decides to publish it."); 11th Cir. I.O.P. 36-5 ("Opinions that the panel believes to have no precedential value are not published")." see **_Riley v. Camp_**, 130 F.3d 958, note 5 (C.A. 11 (Ga.), 1997)

14. "Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well." See **_Seals v. Division of Youth Services_**, 91 F.3d 149 (C.A. 8 (Mo.), 1996)

15. Our 7th Circuit Rule 32.1 (d) states " No order of this court issued before January 1, 2007, may be cited except to support a claim of preclusion (res judicata or collateral estoppel) or to establish the law of the case from an earlier appeal in the same proceeding)"  Rule 32.1 (b) states that "Order, which are unsigned, are released in photocopied form, are not published in the Federal Reporter, and are not treated as precedents."  See ***In re City of Chicago***, 500 F.3d 582 (7th Cir. 2007). ("order was non-precedential under Circuit Rule 32.1")

16. Therefore, ABA's heavy reliance upon those unpublished decisions are misplaced.

## This Circuit Clearly Indicated that ABA Can Be State Actor

17. Despite the great number of cases and the seemingly well-honed lexicon of "tests," the concept of "state action" remains a difficult one. "[F]ormulating an infallible test," the Supreme Court has said, remains an "impossible task." ***Reitman v. Mulkey***, 387 U.S. 369, 378, 87 S.Ct. 1627, 1632, 18 L.Ed.2d 830 (1967). See ***Spencer v. Lee*** 864 F.2d 1376, 1382 (7th Cir. 1989).

18. ABA claimed that "No court has ever held that the ABA is a state actor for any purpose."  That is quite an overstatement.

19. In ***Waller v. Southern Illinois University***, 125 F.3d 541 (C.A. 7 (Ill.), 1997), the Seventh Circuit assumed that ABA was an state actor and proceeded to resolve the case on its merit.

20. In the case of ***Cohen v. Illinois Institute of Technology***, 524 F.2d 818 (C.A. 7 (Ill.), 1975), the Seventh Circuit states that " On the other hand, it is equally clear that the State's support of I.I.T. is sufficiently significant to require a finding of state action if that support has furthered the specific policies or conduct under attack." ***Id*** at 825.

4

21. Apply that approach to our instant case, it is clear ABA is state actor. Supreme Court Rule 703 (b) of State of Illinois supports and furthers the specific policies of Standard 304 (c).

22. Responding to note 5 of ABA's Motion to dismiss, ABA is correct to point out that Arizona State Supreme Court's adoption in toto of disciplinary rules from ABA's Code of Professional responsibility did not transform ABA's formulation of those rules into state action. On the other hand, State of Illinois did not adopt ABA rule in toto. Rather, it delegated in toto the rule making and rule enforcing role to ABA in legal education in Illinois. State Bar Association of Arizona is a state actor because it enforces those rules adopted in toto by State of Arizona. ABA takes the place of State Bar Association of Arizona, because it is in charge of enforcement of those rules sanctioned by Supreme Court Rule 703 (b). see also **_Ford Motor Credit Co. v. Sperry_** 827 N.E. 2d 422, 214 Ill.2d 371, 292 Ill.Dec. 893 (IL. 2005).

23. Defendant ABA is " a private party and the question is whether his conduct has sufficiently received the imprimatur of the State so as to make it "state" action for purposes of the Fourteenth Amendment. See, e.g., Flagg Bros., Inc. v. Brooks, 436 U.S. 149, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978); Jackson v. Metropolitan Edison Co., supra; Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972);" see **_Blum v. Yaretsky_**, 457 U.S. 991, 1003 (1982). ABA's Standard 304 (c) received imprimatur from the State of Illinois through Illinois Supreme Court Rule 703 (b) and its case authority **_Ford Motor Credit Co. v. Sperry_** 827 N.E. 2d 422, 214 Ill.2d 371, 292 Ill.Dec. 893 (IL. 2005).

5

## Regulation of Legal Education and Legal Profession is Solely the Function of Supreme Court of Illinois --- *which has delegated carte blanche the regulation of law school to ABA by its Rule 703*

24. ABA cited many cases laws regarding Accreditation Agencies not being a state actor. ABA is simply ignoring one simple reality: All the other accreditation agencies are not mandated by the State to promulgate rules regulating the school they accredit and to enforce those rules. (There are more than 200 professions regulated by Illinois Department of Professional and Financial Regulation. IDPFR does not regulate legal profession)

25. There is no Supreme Court Rule of Illinois comparable to Rule 703 (b) regarding all the other accreditation agencies.

26. Here, the regulation of legal education and legal practice is solely the function of the Supreme Court of Illinois. ***Ford Motor Credit Co. v. Sperry*** 827 N.E. 2d 422, 214 Ill.2d 371, 292 Ill.Dec. 893 (IL. 2005). Supreme Court of Illinois delegates the rule making to ABA in toto. Especially, the enforcement of those rules are the exclusive function of ABA.

27. Under ***Bates v. State Bar of Arizona*** 433 U.S. 350 (1977), ABA is state actor. "Although the State Bar plays a part in the enforcement of the rules, its role is completely defined by the court; the appellee acts as the agent of the court under its continuous supervision." ***Bates v. State Bar of Arizona*** at 361. The Supreme Court of U.S. applied theory of agency holding that State Bar of Arizona is a state actor. This Court should also apply theory of agency holding ABA as state actor.

28. In ***Ford Motor Credit Co. v. Sperry*** 827 N.E. 2d 422, 214 Ill.2d 371, 292 Ill.Dec. 893 (IL. 2005), the Supreme Court of Illinois emphatically states that

> This court has the inherent power to define and regulate the practice of law

in this state. *In re Anastaplo,* 3 Ill.2d 471, 475, 121 N.E.2d 826 (1954); *People ex rel. Chicago Bar Ass'n v. Goodman,* 366 Ill. 346, 349-50, 8 N.E.2d 941 (1937). More specifically, "the power to prescribe rules governing attorney conduct, and to discipline attorneys for violating those rules, rests solely in this court." *People ex rel. Brazen v. Finley,* 119 Ill.2d 485, 494, 116 Ill.Dec. 683, 519 N.E.2d 898 (1988).

To this end, our court has promulgated rules which set forth detailed regulations for the study of law and which govern the admission of applicants to our state bar. See 134 Ill.2d Rs. 701 through 720. ***id at 429.***

29. Supreme Court Rule 703 (b) of the State of Illinois gives carte blanche delegation of authority to ABA in the area of regulating law school.  Because of that complete delegation of authority and because regulating the legal profession and legal education is solely the function of the Supreme Court of State of Illinois, ABA simply can not escape the simple fact that it is a very powerful and omnipresent super state actor.   In the areas of regulating the legal education, it is super legislature, super judiciary, and super executive.   It is a simple fact that so far, the State of Illinois Supreme Court has not second guessed ABA's regulation.

30. If the State of Illinois Supreme Court adopted Standard 304 (c),  then Hu will be able to challenge it facially under section 1983. On the other hand, if the State of Illinois Supreme Court did not specifically adopt Standard 304 (c),  Hu can still challenge that Standard 304 under the theory of agency with ABA being an agent of State of Illinois.

31. ABA emphasized its status as an accreditation institute.  But in analyzing state action, it is not one's status that is important.   It is one's action, function that is determinative, not one's name and status.

32. If the State of Illinois imposes rules and law upon private law school, there will be no doubt, those rules or laws can be challenge under section 1983 as state action.   The fact

7

that State of Illinois delegate that function to ABA does not change that a bit.

## ABA's Citation of *Twombly* is Inapposite

33. The issue decided by **_Bell Atlantic Corp. v. Twombly_** 127 S.Ct. 1955 (2007) is the following: Does the pleading of mere parallel conduct satisfy the pleading requirement of Rule 8 in alleging "contract, , combination, or conspiracy" under the Sherman Act? The Supreme Court answered the question in the negative.

34. Parallel conduct can conceivably be a part of conspiracy, but it is not quite plausible without more specific allegation. There are other rational and plausible business explanation to parallel conduct: competing in each other's territory is less likely to be more profitable than focus upon the upgrading technology in one's own territory, especially in light of the fact of the extremely expensive initial investment in building the necessary infra-structure to compete.

35. It is quite speculative to conclude conspiracy, contract or combination from mere parallel conduct.

36. The teaching of *Twombly* is quite clear: speculative factual pleading is not enough to survive a Rule 12 (b)(6) motion. "Factual allegations must be enough to raise a right to relief above the speculative level." *Id* at *12.

37. None of Hu's factually pleading is speculative and ABA's citation of *Twombly* is inapposite.

## Rational Basis Review is Not Toothless

38. "For over a century, the Court has engaged in a continuing and occasionally almost

8

metaphysical effort to identify the precise nature of the Equal Protection Clause's guarantees.[2] At the minimum level, however, the Court 'consistently has required that legislation classify the persons it affects in a manner rationally related to legitimate governmental objectives.' *Schweiker v. Wilson*, 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981)." See **Logan v. Zimmerman Brush Company** 455 U.S. 422, 439 (1982)

39. ABA has yet to identify its legitimate objective of that Standard 304 (c).

40. But the "rational-basis standard is 'not a toothless one,' " *Schweiker v. Wilson*, at 234, 101 S.Ct., at 1082, quoting *Mathews v. Lucas*, 427 U.S. 495, 510, 96 S.Ct. 2755, 2764, 49 L.Ed.2d 651 (1976); the classificatory scheme must "rationally advanc[e] a reasonable and identifiable governmental objective." **Schweiker v. Wilson**, 450 U.S., at 235, 101 S.Ct., at 1083.

41. ABA's seven years rule is arbitrary and capricious.   Why seven years, instead of five years or ten years?   Upon information and believe, not only is that Standard 304 (c) arbitrary, that Standard 304 (c) has been changed several times arbitrarily.

42. Unnecessarily and wastefully repeating one's first year law school experience does not rationally advance any legitimate objective other than increasing law schools' revenue or preventing some one from pursing legal career.

43.  A classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' **Royster Guano Co. v. Virginia,** 253 U.S. 412, 415 (40 S.Ct. 560, 64 L.Ed. 989) (1920).

44. Standard 304 (c) offends the equal protection because 'the classification rests on grounds wholly irrelevant to the achievement of the State's objective,' McGowan v. Maryland, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961), see **Lindsey**

9

*v. Normet*  405 U.S. 56, 70 (1972).

45. ABA failed in its Motion to dismiss identify its legitimate state interest and ABA further failed to explain how Standard 304 (c) rationally advance that legitimate state interest.  Therefore ABA failed to carry its burden of demonstrating that Standard 304 (c) would pass rational standard of review.

## Hu Clearly Alleged his Property Interest in the Complaint

46. In Hu's First Amended Complaint ¶ 43, Hu alleged that he has property interest in the credit he completed in Kent.  Hu cited three case authorities supporting his claim.  Hu tried to comply Rule 8 without further detailed elaboration to make it into a legal brief or memorandum of law.

47. ABA alleged that "The First Amended Complaint nowhere alleges that Chicago Kent, in 1991, made a legally-binding commitment to Mr. Hu that his credit hours would be applied toward a law degree if he were to re-enroll 17 years later."

48. To respond to ABA, it is enough that Hu alleges his property interest in his complaint.

## ABA Failed to Respond to Hu's Due Process Claim under the Doctrine of Irrebuttable Presumption

49.  Standard 304 (c) has an irrebuttable presumptions that law student who failed to complete his or her legal education within seven years are not qualified to be lawyers by continuing his or her legal education unless he or she start over again.

50. From ¶ 45-¶ 48,  Plaintiff Hu challenged Standard 304 (c) violating the procedural due process of 14th Amendment.  Defendant ABA simply failed to make any specific attempt trying to dismiss Hu's Count II other than claiming that Hu failed to allege his

property interest in his credit in Kent.

## ABA Failed to Respond to Hu's Challenge of Standard 304 Impinging Upon his Fundamental Right of Child Rearing

51. Plaintiff Hu challenged Standard 304 violating substantive due process by impinging upon Hu's fundamental right of marriage and child rearing. (First Amended Complaint ¶¶ 38-41).

52. Defendant ABA did not challenge Hu's legal theory that Standard 304 could impinge upon one's fundamental right of marriage and child rearing. Rather, ABA asserted that Standard 304 did not impinge upon Hu's fundamental right to marriage and child rearing because there was a gap of 4 years between Hu's leaving of law school and his first born child.

53. As is stated in ¶¶ 1-3 in this Response, ABA's factual challenge and its construction of Hu's amended complaint is incorrect.

54. This Court should take judicial notice of the stated fact in this Response regarding Hu's marriage and child rearing. Essentially, ABA's motion to dismiss left standing of Hu's claim of violation of substantive due process.

## ABA Failed to Respond to Hu's Claim that this Court has Jurisdiction under Doctrine of Common Law Due Process

55. If this Court has jurisdiction under the doctrine of common law due process, the issue whether ABA is a state actor is not longer crucially important. If this Court obtains jurisdiction under the doctrine of common law due process, then ABA's Motion to

dismiss on jurisdiction ground that it is not a state actor must fail. .

## In *Plyler v. Doe* Supreme Court Applied Heightened Scrutiny to Education Requiring "Substantial State Interest"

56. In 1973, the Supreme Court of United States declared that education is not fundamental right. ***San Antonio Independent School district v. Rodriguez***, 411 U.s. 1, 28-39. The decision is a 5-4 decision with both Justice Powell and Justice Blackmum on the majority of five Justices.

57. About nine years later, in ***Playler v. Doe***, both Justice Powell and Justice Blackmum also constituted the majority of five apply intermediate level of scrutiny striking down the Texas Statute denying undocumented Mexican children public education.

58. Justice Blackmum declared in ***Plyler v. Doe*** that "In a sense, then denial of an education is the analogue of denial of the right to vote". ***Plyler v. Doe*** 457 U.S. 202, 234. Right to vote is considered to be the fundamental right ***Rodriguez*** at 101 and " the right to vote, *per se*, is not a constitutionally protected right." ***Rodriguez*** at 35, n.78.

59. ***Plyler v. Doe*** certainly did not overrule ***Rodriguez***, but the Supreme Court clearly indicated that heightened scrutiny is warranted even if education is not declared as fundament right. ***Rodriguez*** rejected strict scrutiny and applied rational basis review, ***Plyler v. Doe*** took a step forward applying intermediate level of scrutiny.

60. The Supreme Court in ***Plyler v. Doe*** applied intermediate level of scrutiny towards the educational issue involved. ***Id*** note 16. Finding that there is no substantial state interest, the Supreme Court invalidate the Texas statute denying education to undocumented Mexican children.

61. Applying intermediate level of scrutiny to our instant case, Defendant ABA have not showed any legitimate state interest, let alone the substantial state interest.

## Prayer of Relief:

Plaintiff respectfully pray this Court deny ABA's motion to dismiss.

Respectfully submitted:   Yaodi Hu        yaodi_hu@sbcglobal.net   (773) 216- 3173

219 w. Cermak Chicago IL 60616        signature:  yaodi hu