UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | |
|---|---|
| YAODI HU ) | |
| ) | No. 08 CV 1033 |
| Plaintiffs ) | |
| Vs. ) | Judge Ruben Castillo |
| American Bar Association & ) | |
| Illinois Institute of Technology ) | Jury Demand |
| Robert Thomas, Chief Justice of ) | |
| Supreme Court of Illinois in his Official ) | |
| Capacity ) | |

# Second Amended Complaint

## Parties

1. Yaodi Hu is a resident of Illinois. Yaodi Hu was an IIT Chicago Kent College of Law student. He was a member of 1990 class.

2. Illinois Institute of Technology is a university located at 3300 S. Federal Street Chicago IL 60616.

3. American Bar Association is a voluntary bar association of lawyers and law students. The ABA has about 400,000 members.

4. Robert Thomas is the current Chief Justice of the State of Illinois Supreme Court with the Clerk's Office located at 160 N. LaSalle Street Chicago IL 60601.

## Jurisdiction

5. The Court has jurisdiction over this cause of action under 28 U.S.C.§1331 and 28 U.S.C. § 1343(a)(4), because the action arises under the laws of the United States. The requested relief is proper under 28 U.S.C. § 2202. An actual justiciable controversy exists between the Plaintiff and Defendant in the instant case. This Court also has

1

jurisdiction under the doctrine of common law due process.  *See* *Thomas M. Cooley Law Sch. V. American Bar Association* 459 F.3d 705  (6th Cir. 2006).

# Venue

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (b)(2), in that all the events giving rise to the claim arose in this district.

# Statement of Fact

7. Yaodi Hu completed about two years of credit hours at IIT Kent College of Law in 1991. Hu married and now he has three children of age of 13, 11 and 6.

8. During the past decade, Hu has attempted several times trying to be re-enrolled in IIT and was unable to do so partially because ABA rules (Standard 304 (c)) disallowing Hu's past credits.  Upon information and belief, ABA arbitrarily changes its Standard 304 (c) several times during the past decades or so.  The change of ABA's standard does not require prior approval of the Supreme Court of Illinois.

9. When it comes to regulation of legal education in State of Illinois, the State of Illinois Supreme Court has delegated to and entrusted ABA with the complete power of rule making, rule enforcing and adjudication process of the violation of ABA rules (Standards).

10. Although the State of Illinois Supreme Court has the power to intervene and invalidate the rules or Standards enacted by ABA, the Supreme Court so far has been content with the complete delegation and entrustment of the rule making and rule enforcing authority and adjudication process of the violation of ABA Standard to American Bar Association.

11. The Supreme Court Rule of State of Illinois 703 (b) states that "each applicant shall have

pursued a course of law studies and fulfilled the requirements for and received a first degree in law from a law school approved by the American Bar Association."

12. Through Supreme Court of Illinois Rule 703 (b), and it is the custom and policy of the State of Illinois delegating the complete regulatory authority to ABA regarding legal education in State of Illinois.

13. According to ABA, it "provides law school accreditation." ABA accreditation is important not only because if affects the recognition of the law schools involved, but it also impacts a graduate's ability to practice law in a particular state. Specifically, in most jurisdictions, graduation from an ABA accredited law school is expressly stated as prerequisite towards being allowed to sit for that state's bar exam, and even for existing lawyers to be admitted to the bar of another state upon motion.

14. But ABA does not just provide law school accreditation. In Illinois, any law school which wants to be accredited, has to comply with all the rules (Standards) set by ABA. These Standards has the effect of State Law, because of the imprimatur by the Supreme Court Rule 703 (b).

15. ABA accredited law schools are the only law schools from which law students would be accepted by State of Illinois to take Bar examination. ABA has the monopoly power bestowed upon it by the State government.

16. ABA's accreditation decision can be challenged in court by the law school under the doctrine of "Common Law Due Process." That doctrine created by Judges is a recognition that ABA, like any other accreditation agencies, is performing public functions, whether it is a administrative decision or a legislative rule making.

17. Hu has the standing to challenge the facial validity of Standard 304 (c) under the judicial doctrine of Common Law Due Process. Neither in ABA's Memorandum supporting its Motion to Dismiss, nor in this Court's opinion dismissing Hu's First Amended

3

Complaint, was the issue of jurisdiction based upon Common Law Due process addressed.

18. Fourteenth Amendment does not reach pure private conduct. But enactment of Standard 304 (c) is not a private conduct, it is a public function, it is in fact the exclusive prerogative of the State of Illinois Supreme Court. The issue of facial validity of Standard 304 (c) also is not a private issue. Under the holding of **_Brentwood Academy v. Tennessee Secondary School Athletic Association_**, 531 U.S. 288 (2001), because ABA is performing this function of regulating the law school education, which was exclusively and traditionally public, ABA is a state actor.

19. ABA is a state actor, when it has been delegated a public function by the State. see **_West v. Atkins_** 487 U.S. 42, 56 (1988).

20. Lawyers are a special group of people. Under almost all the states' law, they are considered the "officers of court."  By taking the oath, when lawyers get their law license, they take upon themselves the duty to the system, to the state. Their first duty is to the state, preserving its integrity. When there is a conflict between their duty to the state and their duty to their client, their duty to the states comes first. In essence, lawyers are no longer pure private parties, they are semi-public officials. They perform a unique and exclusive public functions, even when they are representing their client for compensation. ABA is the largest association of lawyers. Most of the activities conducted by ABA are not purely private activities, such as recommending judicial candidates.

21. ABA is also a willful participant in joint activity with the State or its agents,  see **_Lugar v. Edmondson Oil Company, Inc._** 457 U.S. 922, 929 (1982). The Supreme Court of Illinois Rule 711 regulates the practice of law by the law students in the law school. ABA is a willful participant in jointly regulating the law students' activities together with

4

Supreme Court of Illinois.   ABA did no have to accept its responsibility of enforcing the Standard 304 (c) for the State of Illinois Supreme Court.   But it did willingly and voluntarily accept that responsibility and it visits IIT on an annual basis making sure IIT comply with all the Standards adopted by the Supreme Court of Illinois.   ABA is acting as police for the State of Illinois.   ABA is wielding this enormous policing power from the State of Illinois in enforcing ABA standards.    If any law school, including IIT violates ABA standards,  ABA can bring charges against the law school, bring them in front of committee of ABA and sanctioning the violation by the law school.   In that regard,  ABA is not only state cop, it is also the jury, the judge.   It is also the prosecutor.  ABA monopolizes all those coercive state powers when it comes to regulation of legal education.   The private entity IIT is controlled by ABA which is a state agency enforcing all those Standards adopted by the Supreme Court of Illinois.

22. Enforcing that Standard 304 (c) adopted by the Supreme Court of Illinois upon plaintiff Hu is a delegated function of the State of Illinois.  IIT and ABA both are state actors working jointly on behalf of State of Illinois enforcing Standard 304 (c) upon Hu.

23.  Standard 304(c) is interpreted by ABA as without exception.  That  Standard 304 (c) adopted by the State of Illinois Supreme Court so effectively directs or controls the actions of the private party IIT in denying Hu's re-enrollment application that the state can be held responsible for the private party's decision.   As was stated by the officials of IIT, it had to follow that Standard 304 (c), otherwise, it would be sanctioned by ABA in enforcing that Standard 304 (c).   IIT's conduct is controlled by the State of Illinois through its agent ABA.

24. Because that Standard 304 (c) is interpreted as being inflexible,  Hu challenges the facial validity of that Standard 304 (c).   It is the State's Standard 304 (c) effectively shutting the door to Hu.  The State of Illinois is directly responsible for the action of IIT.   IIT had

5

to follow that state law, enforced by ABA.

25. Assuming this Court is correct in asserting that the Supreme Court of State of Illinois adopted ABA Standards in toto, ABA is still a state actor, because it is a willful participant in joint activity with the States in enforcing those Supreme Court adopted ABA standards.   Enforcing those Standards in the law school, is essentially the exercise of coercive power from the State.

26. Unlike all the other accreditation agencies,  with accreditation  opening up  the availability of Federal student loan,  ABA's accreditation is far more important.  It is a monopoly.   Without its accreditation, in state of Illinois, no law school can possibly survive.

27. Unlike other accrediting agency, which does not enact detailed Standard or rules for the schools to follow,  ABA enacted extraordinarily detailed Standard mandating this nation's  law school to follow.   ABA is not only a super legislator, super judiciary and super administration for the State of Illinois, when it comes to the regulation of law school, ABA is also a super legislator, super judiciary and super administration for the entire nation, when it comes to law school regulation.   ABA is not only a monopoly in the State of Illinois, it is also a monopoly in the United States of all fifty States.

28. United States is a country of rule law.   The rule of law is accomplished through the lawyers' collective effort.    Many governmental officials are licensed lawyer.   ABA's upper management and its operational apparatus are permeated with current and prior governmental official at all levels, including federal and states.   Under the holding of ***<u>Brentwood Academy v. Tennessee Secondary School Athletic Association</u>***, 531 U.S. 288 (2001),  ABA is entwined in its management or control with governments at all levels and therefore is a state actor.   ABA is a driving force in selecting this nation's judges at all levels, including the Supreme Court of the United States.   Most judges are

6

prior ABA members, endorsed and supported by ABA to be the judges. There is reason to believe that a substantial number of current judges are current member of ABA. For example, Chief Justice Robert Thomas of the State of Illinois Supreme Court is a current member of Dupage County Bar Association. (according to website information by www.state.il.us.)

29. Hu hereby explicitly allege that ABA is a state actor acting as the agent of State of Illinois and all the other 49 States government, enacting the standard of 304 (c) under the complete delegation of authorities all state government regarding the regulation of the law schools in U.S.A.

30. Recently on February 15, 2008, Hu visited Kent College again and was told that ABA has a new rule of about two years, barring any credits earned more than seven years ago to be honored.

31. March 15, 2008, Hu visited Kent College. Hu was attempting to submit an application for re-enrollment for the fall of 2008 to Kent College of Law. Both Hu's application and the application fee were rejected by the associate dean of the student affairs of the Kent College. University counsel was involved in making that decision on March 15, 2008.

32. According to ABA, Illinois Institute of Technology has the discretion to allow exceptions. IIT is a voluntary and willing participant in strictly enforcing that Standard 304 (c). Application of Standard 304 (c) by IIT to Hu is arbitrary and capricious and without due process. The unconstitutional application of Standard 304 (c) by IIT turned it into state actor. Supreme Court of Illinois adopted Standard 304 (c) as its own state rule. IIT willingly, willfully enforced the rule on behalf of the State of Illinois, and therefore, it is state actor.

33. Law school education could be deemed a subset of the State's control over the regulation of the practice of law, and the enforcement of Standard 304 (c) was indirectly delegated

7

to IIT.  IIT has to enforce the rule according to ABA's interpretation of Standard 304 (c). According to IIT, ABA's interpretation of Standard 304 (c) is that there is no exception is allowed.  IIT was and is indirectly under the coercive power of State of Illinois.  IIT felt compelled to deny Hu's application of re-enrollment.  It did not want its relationship and accreditation with ABA being in jeopardy.  It felt that it had to strictly follow Standard 304 (c).  State of Illinois and its agent ABA is exerting the coercive power of the State upon IIT compelling it to deny Hu's re-enrollment application.  The coercive power of Supreme Court of Illinois is every where, from ABA, to IIT.  Hu has no alternative but to follow those state coercive power.  According to both IIT and ABA, Hu should follow that state coercive power to start his legal education all over again.  Hu was not able to re-enroll despite his repeated effort.

34. According to ABA, IIT is state actor, because it did not have to strictly enforce Standard 304 (c), a rule adopted by the Supreme Court of Illinois.  Rather, according to ABA attorneys, IIT voluntarily enforced Standard 304 (c), a state rule, with discretion and willingly participated in being state agent enforcing standard 304 (C).

35. While ABA was pointing fingers at IIT, stating that IIT has the discretion in enforcing Standard 304 (c), adopted by State of Illinois Supreme Court, IIT is pointing fingers at ABA stating that ABA has the coercive power from the State of Illinois mandating IIT strictly follow Standard 304 (c).  ABA has the exclusive responsibility and power to enforce Standard 304 (c) on behalf the Supreme Court of State of Illinois.  Because of this exercise of exclusive coercive governmental power from the State of Illinois, IIT felt compelled to strictly comply with Standard 304 (c).  Otherwise, IIT fear, that its accreditation could be in jeopardy.

36. It is quite clear, that ABA does have power to amend the Standard 304 (c), ABA also has the authority to interpret the Rule.  Assuming State of Illinois adopted those ABA rules,

8

ABA is still state actor, because it interprets the rule, it has discretion to create exceptions, it has the power to change the rule. (Again, we can assume that every time ABA changes its Standard, the State would adopt that change automatically, but that really defy the logic of our life experience. The States gave ABA cater blanche authority to make rules regulating the law school, which is the exclusive prerogative of all the State governments.) The fact that ABA monopolizes that exclusive governmental function, can hardly be categorized that education is some how a private matter. Education might be a private matter, but the regulation of education is not a private matter. Especially the regulation of legal education.

## ABA is a State Actor

37. Under many U.S. Supreme Court cases, such as ***Burton v. Wilmington Parking Authority***, 365 U.S. 715 (1961), ***Marsh v. State of Alabama*** 326 U.S. 501 (1946), ***Edmonson v. Leesville Concrete Company***, Inc., 500 U.S. 614 (1991), ***Lugar v. Edmondson Oil Company, Inc.*** 457 U.S. 922, 929 (1982), ABA is a state actor and its promulgation of its ABA rules are state action.

38. As is indicated by the Supreme Court: "While the principle that private action is immune from the restrictions of the Fourteenth Amendment is well established and easily stated, the question whether particular conduct is 'private,' on the one hand, or 'state action,' on the other, frequently admits of no easy answer. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 723, 81 S.Ct. 856, 860, 6 L.Ed.2d 45 (1961); *Moose Lodge No. 107 v. Irvis,* supra, 407 U.S. at 172, 92 S.Ct. at 1971." See ***Jackson v. Metropolitan Edison Company*** 419 U.S. 345, 350 (1974).

39. "American Bar Association is a representative body upon whose accreditation decisions

9

a state court or bar examining board properly may rely." See ***In Torjesen v. Smith***, 114 Ill.App.3d 147, 69 Ill.Dec. 813, 448 N.E.2d 273 (5 Dist. 1983), appeal dismissed, 465 U.S. 1015 (1984).

40. Defendant ABA claimed that it is not a state actor. To reach that conclusion, ABA's reliance upon ***Lawline v. American Association***, 956 F.2d 1378 (1992) which in turn relied upon ***National Collegiate Athletic Association v. Tarkanian*** 488 U.S. 179 is misplaced. ***Tarkanian*** is a close case of 5-4 decision. The majority focused upon the fact that the state university of Nevada could withdraw from NCAA. The Court also emphasized that NCAA is adversary to State University of Nevada. And therefore the state action of State University of Nevada can't convert NCAA's private action into state action. The Court specifically pointed out that "UNLV retained the authority to withdraw from the NCAA and establish its own standards." ***Id*** at 194. IIT Kent certainly does not have choice not to be accredited by ABA. IIT Kent can't establish its own standard because of the Supreme Court Rule 703 (b) of State of Illinois. ABA carries "a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." ***Monroe v. Pape***, 365 U.S. 167, 172 (1961).

41. In ***Mckeesport Hosp. v. Accreditation Council*** 24 F.3d 519 (3rd Cir. 1994) the concurring judge Honorable Becker's opinion is more persuading. In Becker's opinion, defendant's action is state action because Pennsylvania has totally ceded any meaningful responsibility to conduct reviews to defendant. In Becker's opinion, the case is not controlled by *National Collegiate Athletic Association v. Tarkanian*, 488 U.S. 179 (1988), where the state took the final action that harmed the plaintiff. "Consequently, we must determine whether state action exists either because there is a 'nexus' between the Board and the ACGME, *see Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351,

10

95 S.Ct. 449, 453, 42 L.E.2d 477 (1974), or a 'joint participant' relationship between the Board and the ACGME, *see Burton v. Wilmington Parking Authority* 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed. 2d 45 (1961). In my view there is state action under either a 'nexus' or 'joint participant' approach." *See Mckeesport Hosp. v. Accreditation Council* 24 F.3d 519 (3rd Cir. 1994)

42. In fact, the Supreme Court case of **West v. Atkins** 487 U.S. 42 (1988) presents a similar situation this instant case. **West v. Atkins** is a 9-0 unanimous decision. Actions by a private physician contracted by prison authority are considered state action. In **West v. Atkins**, "Doctor Atkins is authorized and obliged to treat prison inmates, such as West. He does so 'clothed with the authority of state law." *Id* at 55. In our instant case, ABA is authorized and obliged to set the standard for a law school and approve or disapprove a law school in the State of Illinois because of the Supreme Court Rule 703 by State of Illinois. ABA does so "clothed with the authority of state law". See **United States v. Classic,** 313 U.S. 299, 326 (1941). In **West v. Atkins**, "the State delegated that function to respondent Atkins; and respondent voluntarily assumed that obligation by contract." *Id* at 56. In our instant case, the State of Illinois delegated its function of regulating the law school to ABA and ABA voluntarily assumed that obligation. In **West v. Atkins**, "it is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State" *id* at 56. Unlike the case of **Bates v. State bar of Arizona**, 433 U.S. 350, (1977) where the States retains the plenary role of rule making, and unlike the case of **Lawline v. American Bar Ass'n** 956 F.2d 1378 (7th Cir. 1992), relied upon by the defendant ABA, where the State of Illinois adopted and retained plenary power to reexamine those standards, in our instant case, State of Illinois delegated complete authority and discretion to ABA in the area of regulating the law school. ABA's insistence and its

11

position that it is not a state actor is quite incompatible with its prestigious, powerful and monopolistic position it enjoys and the critical functions it plays within the State of Illinois in terms of regulating the law school.

## Count I  Violation of Substantive Due Process of Law

43. The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV.  The Due Process Clause has a substantive component.  See. E.g., **_Planned Parenthood of S.E. Pennsylvania v. Casey_**, 505 U.S. 833, 846-47 (1992)

44. The United States Supreme Court has stated that in addressing matters of substantive due process, the utmost care must be taken when being asked to break new ground in Fourteenth Amendment jurisprudence. **_Collins v. Harker Hts._** 503 U.S.115, 125 (1992).

45. In any substantive due process case, the Court must first determine the standard of review **_Sammon v. New Jersey Bd. Of Medical Examiners_**,  66 F.3d 639, 643-44 (3rd Cir. 1995). The choice of standard of review turns on whether a "fundamental right" is at stake. **_Id._**

46. The Supreme Court in **_Meyer v. Nebraska_**, 262 U.S. 390, 399, (1923) acknowledged a fundamental interest inherent in the right to engage in any of the common occupations of life.

47. Deprivation of that fundamental right to pursue one's calling of practicing law  therefore, must be evaluated under a compelling interest test.  **_Shapiro v. Thompson_** (1969), 394 U.S. 618.  Accordingly, the legislation must be narrowly tailored to serve a compelling governmental interest.  **_Reno v. Flores_** (1993), 507 U.S. 292, 301-302.

48. Hu hereby challenge the ABA rule as both unconstitutional on its face and as applied to him.  That ABA rule deprives Hu's substantive due process right under the Fourteenth Amendment.

12

49. Hu did not go back to law school within seven years because he married and raised three children.  Under ***Roe v. Wade*** 410 U.S. 113, 152 (1973),  ABA's seven year rule impinge upon Hu's fundamental liberty interest related to his marriage and child rearing.   See also ***Carey v. Population Services International*** 431 U.S. 678, 684 (1977), ***Planned Parenthood of Southeastern Pennsylvania v. Casey*** 505 U.S. 833 (1992).

50. In ***Cleveland Board of Education v. Cohen v. Chesterfield County School Board*** 414 U.S. 632 (1974), under the substantive due process clause of the Fourteenth Amendment, the Supreme Court invalidated a mandatory unpaid maternity leave  beginning five months before the expected birth of a public school teacher's child.  The rule of mandatory leave impinged upon the fundamental liberty interest of marriage and child rearing.

51. "Where certain 'fundamental rights' are involved, the Courts has held that regulation limiting these rights may justified only by a 'compelling state interest.' Kramer v. Union Free School, 395 U.S. 621, 627, 89 S.Ct. 1886, 1890, 23 L.Ed.2d 583 (1969); Shapiro v. Thompson 394 U.S. 618, 634, 89 S.Ct.1322, 1331, 22 L.Ed.2d 600 (1969); Sherbert v. Verner, 374 U.S. 398 406, 83 S.Ct. 1790, 1795, 10 L.Ed.2d 965 (1963), and that legislative enactments must be narrowly drawn to express only the legitimate state interests at stake.  Griswold v. Connecticut, 381 U.S. at 485, 85 S.Ct., at 1682; Aptheker v. Secretary of State, 378 U.S. 500, 508, 84 S.Ct. 1659, 1664, 12 L.Ed.2d 992 (1964); Cantwell v. Connecticut, 310 U.S. 296, 307-308, 60 S.Ct. 900, 904-905, 84 L.Ed. 1213 (1940)" ***Roe v. Wade*** 410 U.S. 113, 155 (1973).

52. In ***Carey v. Population Services International*** 431 U.S.678, 684-685 (1977), ***Roe v. Wade***, 410 U.S. 113, 152 (1973), ***Planned Parenthood of Southeastern Pensylvania v. Casey*** 505 U.S. 833,  the Supreme Court of U.S. consistently held that education is a constitutionally protected fundamental liberty interest.  "Thus all fundamental rights

13

comprised within the term liberty are protected by the Federal Constitution from invasion by the States." **_Whitney v. California_**, 274 U.S. 357, 373 (1927).  That liberty interest is protected by the substantive due process clause of the Fourteenth Amendment.

## Count II.  Violation of Procedural Due Process Law

53. For purposes of procedural due process, property is "a legitimate claim of entitlement." **_Bd. Of Regents of State Colls. v. Roth_**, 408 U.S. 564, 577 (1972).  A claim of entitlement is not created by federal law; instead it is created and …defined by existing rules or understandings that stem from an independent source such as state law---rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." **_Id_**.   See also **_Ulichny v. Merton Cmty. Sch.Dist_**., 249 F.3d 686, 700 (7th Cir. 2001).  **_Johnson v. City of Fort Wayne_**, 91 F.3d 922, 943 (7th Cir. 1996).

54. Illinois Courts have found that the payment of tuition to an educational institution ordinarily gives rise to an implied contract.  Hu has property interest in his law school credit hours he completed.  His property interest in his law school credit is defined by contract law in State of Illinois. See **_Johnson v. Lincoln Christian Coll_**., 150 Ill.App.3d 733, 103 Ill.Dec. 842, 501 N.E.2d 1380 (1986).  See also **_Easley v. University of Michigan Board of Regents_**  627 F.Supp.580 (E.D. Mich. 1986).  **_Perry v. Sindermann_** 408 U.S. 593 (1972).

55. ABA's seven year rule disallowing the student earned credit in law school is arbitrary and irrational and unconstitutional.  See **_Marozsan v. United States_** 852 F.2d 1469, 1480 (7th Cir. 1988).  One's life experience can substantially contribute to one's understanding of the substantive law.  One's job experience, if related with law can also substantially enhance one's understanding of law.

56. The unilateral change of rule by ABA deprived Hu's property interest without due

process of law under Fourteenth Amendment. ***Mullane v. Central Hanover Bank Trust Co***. 339 U.S. 306 (1950).

57. Without allowing an exception, ABA's Standard 304 (c) creates an irrebuttable presumption, which violated procedural due process under the Fourteenth Amendment. See ***Vlandis v. Kline*** 412 U.S. 441, (1973), ***United States Department of Agriculture v. Murry*** 413 U.S. 508 (1973). ***Stanley v. Illinois*** 405 U.S. 645 (1972)

58. "Statutes creating permanent irrebuttable presumptions have long been disfavored under the Due Process Clauses of the Fifth and Fourteenth Amendments. In Heiner v. Donnan, 285 U.S. 312, 52 S.Ct. 358, 76 L.Ed. 772 (1932), the Court was faced with a constitutional challenge to a federal statute that created a conclusive presumption that gifts made within two years prior to the donor's death were made in contemplation of death, thus requiring payment by his estate of a higher tax. In holding that this irrefutable assumption was so arbitrary and unreasonable as to deprive the taxpayer of his property without due process of law, the Court stated that it had 'held more than once that a statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment.' Id., at 329, 52 S.Ct., at 362. See, e.g., Schlesinger v. Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557 (1926); Hoeper v. Tax Comm'n, 284 U.S. 206, 52 S.Ct. 120, 76 L.Ed. 248 (1931). See also Tot v. United States, 319 U.S. 463, 468—469, 63 S.Ct. 1241, 1245—1246, 87 L.Ed. 1519 (1943); Leary v. United States, 395 U.S. 6, 29—53, 89 S.Ct. 1532, 1544—1557, 23 L.Ed.2d 57 (1969). Cf. Turner v. United States, 396 U.S. 398, 418—419, 90 S.Ct. 642, 653—654, 24 L.Ed.2d 610 (1970)." ***Vlandis v. Kline*** at 446

59. "Likewise, in Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972), the Court struck down, as violative of the Due Process Clause of the Fourteenth Amendment, Illinois' irrebuttable statutory presumption that all unmarried fathers are unqualified to

15

raise their children. Because of that presumption, the statute required the State, upon the death of the mother, to take custody of all such illegitimate children, without providing any hearing on the father's parental fitness. It may be, the Court said, 'that most unmarried fathers are unsuitable and neglectful parents. . . . But all unmarried fathers are not in this category; some are wholly suited to have custody of their children.' Id., at 654, 92 S.Ct., at 1214. Hence, the Court held that the State could not conclusively presume that any individual unmarried father was unfit to raise his children; rather, it was required by the Due Process Clause to provide a hearing on that issue. According to the Court, Illinois 'insists on presuming rather than proving Stanley's unfitness solely because it is more convenient to presume than to prove. Under the Due Process Clause that advantage is insufficient to justify refusing a father a hearing . . ..' Id., at 658, 92 S.Ct., at 1216.4" *Vlandis v. Kline* at 447.

## Count III.  Violation of Equal Protection Clause of 14th Amendment

60. ABA rule essentially created two classes of students, one is within that seven years whose credit hours would be honored and the other is those beyond that seven years whose credit hours would not be honored.

61. ABA's classification of those two classes is irrational and unrelated to its policy consideration.  It's classification can't pass rational basis analysis.

62. Since the underlying interest of practicing law as one's calling is a fundamental interest ***Meyer v. Nebraska***, 262 U.S. 390, 399, (1923), the classification is subject to strict scrutiny. ***Kadrmas v. Dickinson Public Schools***, 487 U.S. 450 (1988).  Whatever the compelling governmental interest there is, it is certainly not narrowly tailored to further that interest.

63. It is also important to point out, ABA Standard 304 (c ) has disproportional impact upon

minorities law students such as Hispanic and African American. The disparate impact upon minority also violated equal protection clause of Fourteenth Amendment.

## Count IV.  Standard 304 (c) Violates Sherman Act

64. Historically, ABA was trying to dictate the salaries of a law school professors and so on. It was being sued by the United States Government and a private law school for violating the Sherman Act. See **_U.S. v. American Bar Ass'n_**, 135 F.Supp.2d 28, (D.D.C. 2001).

65. Standard 304 (c) has the same anti-competitive effect. ABA simply does not allow any law school to have any exception under the rule, so they can compete against each other.

66. Legal education is an interstate commerce. ABA has the exclusive power to regulate most of nation's law school. ABA has the monopoly power to fix the price.

67. By interpreting and enforcing Standard 304 (c) rigidly, ABA is in effect fixing the price of legal education. ABA violates 15 U.S.C. § 1.

## Prayer of Relief:

68. Plaintiff is seeking declaratory and injunctive relief. Hu is seeking declaratory judgment that Standard 304 (c) without allowing any exception by ABA violates 15 U.S.C. § 1. The ABA Standard 304 (c) is unconstitutional on its face. Plaintiff is seeking to be enrolled in 2008 fall class. Plaintiff is also seeking prospective monetary damages if he is prevented from re-enrolling in Kent in Fall 2008.

Respectfully submitted:    Yaodi Hu         yaodi_hu@sbcglobal.net    (773) 216- 3173

219 w. Cermak Chicago IL 60616